# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORANUN BOOPPANON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HARRAH'S RINCON CASINO & RESORT, HARRAH'S ENTERTAINMENT, INC., JANET MANKINS, AND DOES 1 THROUGH 30, INCLUSIVE,<br><br>　　　　Defendants. | CASE NO. 06cv1623 BTM(BLM)<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION FOR LEAVE TO AMEND AND STAYING CASE PENDING TRIBAL EXHAUSTION** |

Specially appearing Defendants Harrah's Rincon Casino & Resort, Harrah's Entertainment, Inc., and Janet Mankins have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), (6), and (7). Plaintiff Soranun Booppanon has filed a motion for leave to file an amended complaint naming additional defendants, Harrah's Operating Company, Inc. and HCAL Corporation. For the reasons discussed below, Defendants' motions to dismiss are **DENIED WITHOUT PREJUDICE**, Plaintiff's motion for leave to file an amended complaint is **DENIED WITHOUT PREJUDICE** and this action is **STAYED** to allow Plaintiff to exhaust tribal remedies.

## I. BACKGROUND

Harrah's Rincon Casino & Resort (the "Casino") is located on the reservation of the

Rincon San Luiseno Band of Mission Indians, a federally-recognized sovereign Indian tribe (the "Tribe"). Pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d)(1), the gaming operations were authorized by a tribal ordinance and a Tribal-State Gaming Compact with the State of California.

On May 25, 2001, the Tribe and HCAL Corporation entered into a Management Agreement. (Pl.'s Exh. 4.) According to the terms of the agreement, HCAL corporation has the "exclusive authority to conduct and direct all business and affairs in connection with the day-to-day operation, management and maintenance" of the Casino. (Management Agreement, ¶ 4.1.)

Plaintiff claims that on August 13, 2005, she was denied services at the Casino's spa facility after she disclosed that she was Hepatitis B positive. Plaintiff alleges that she had a scheduled appointment for a therapeutic deep tissue massage. (Complaint, ¶ 13.) Upon arrival, she was asked to complete a health questionnaire form. (Id. at ¶ 15.) Plaintiff disclosed her Hepatitis B status. (Id.) Shortly after she turned in the form, Plaintiff alleges that she was confronted by Defendant Mankins who identified herself as the spa manager and told Plaintiff that according to the Casino's policy, individuals infected with Hepatitis B were not permitted to receive massage services. (Id. at ¶ 16.)

Plaintiff was then escorted into the back area to the sauna room. (Complaint, ¶ 16.) Five minutes later, another Harrah's employee told Plaintiff that she was not permitted to use the sauna room and that any further questions should be directed to Mankins. (Id. at ¶ 17.) Plaintiff was then escorted to the public reception area, where Mankins allegedly informed Plaintiff that she was not permitted to use any of the spa facilities and would have to obtain a doctor's note if she wished to be eligible to utilize any of the spa services. (Id. at ¶¶ 18-19.) Mankins then allegedly publicly announced that Plaintiff had Hepatitis B and made other comments to the effect that Plaintiff was infected with the HIV virus and/or had AIDS. (Id. at 21.)

Plaintiff has sued "Harrah's Rincon Casino & Resort," Harrah's Entertainment, Inc. and Mankins. Plaintiff asserts the following claims: (1) violation of the Americans with Disabilities

Act ("ADA), 42 U.S.C. § 12101, et seq.; (2) violation of California Civil Code § 51, et seq.; (3) negligence; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; (6) negligent hiring, training and retention (against the Harrah defendants only); (7) defamation; (8) violation of Cal. Bus. & Prof. Code § 17200, et seq.; (9) declaratory relief; and (10) injunctive relief.

## II. DISCUSSION

Defendants make a number of arguments in their motions to dismiss, including the argument that the Tribe should be afforded the opportunity to determine whether this civil dispute falls within the Tribe's jurisdiction. The Court agrees that tribal exhaustion is required, but chooses to stay the case instead of dismissing it.

When there is a "colorable question" whether a tribal court has subject matter jurisdiction over a civil action, federal courts will stay or dismiss the action and "permit a tribal court to determine in the first instance whether it has the power to exercise subject-matter jurisdiction" over the dispute. Stock West Corp. v. Taylor, 964 F.2d 912, 919 (9th Cir. 1992). Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16 n. 8 (1987). The fact that there is no tribal action pending does not defeat the tribal exhaustion requirement. Sharber v. Spirit Mountain Gaming, Inc., 343 F.3d 974, 976 (9th Cir. 2003).

The Court believes there is a "colorable question" regarding tribal jurisdiction. "In general, 'the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.'" Smith v. Salish Kootenai College, 434 F.3d 1127, 1131 (9th Cir. 2006) (quoting Montana v. United States, 450 U.S. 544, 565 (1981)). However, there are two exceptions to this general rule. As explained by the Supreme Court, "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands": (1) "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other

arrangements"; and (2) "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee land within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 450 U.S. at 565-66.

This case arguably falls within the first exception. "The power to exercise tribal civil authority over non-Indians derives not only from the tribe's inherent powers necessary to self-government and territorial management, but also from the power to exclude nonmembers from tribal land." Salish, 434 F.3d at 1139 (quoting Babbitt Ford, Inc. v. Navajo Indian Tribe, 710 F.2d 587, 592 (9th Cir. 1983)). "If the power to exclude implies the power to regulate those who enter tribal lands, the jurisdiction that results is a consequence of the deliberate actions of those who would enter tribal lands to engage in commerce with the Indians." Id. Where tribes possess authority to regulate the activities of nonmembers, "[c]ivil jurisdiction over [disputes arising out of] such activities presumptively lies in the tribal courts." Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997) (quoting Iowa Mutual, 480 U.S. at 18).

It can be plausibly argued that nonmembers who enter onto the Rincon reservation to enjoy the goods or services of the Casino are entering into a commercial relationship with the Tribe and that any disputes arising out of that relationship are subject to tribal court jurisdiction. Plaintiff takes the position that HCAL alone manages the casino and that her dispute with HCAL does not involve the Tribe in anyway. However, the evidence suggests otherwise.

The Casino operations are intertwined with Tribal welfare. The creation and operation of the Casino was designed to promote "tribal economic development, self-sufficiency, and strong tribal governmen[t]." 25 U.S.C. § 2702(1). Although the day-to-day operations are run by HCAL Corporation, the Tribe owns the Casino and is ultimately responsible for managing the Casino's operations. (Tribal-State Gaming Compact (Def.'s Exh. B), § 6.2.) A Tribal Gaming Agency is responsible for conducting on-site gaming regulation and control and for ensuring that, inter alia, the gaming operation complies with "standards no less stringent than federal laws and state laws forbidding employers generally from discriminating

1 . . . in the Gaming Facility on the basis of . . . . disability . . . ." (Tribal-State Gaming
2 Compact, §§ 7.1, 10.2(g).)

3 Therefore, there is a question as to whether this action arises out of a commercial
4 relationship between Plaintiff and the Tribe, and the Court stays its hand until after the
5 Rincon Tribal Court has a "full opportunity to determine its own jurisdiction." Strate, 520 U.S.
6 at 451.  The fact that both Plaintiff and Defendants are nonmembers does not require a
7 different result.  See, e.g., Stock West, 964 F.2d at 920 (holding that district court properly
8 abstained from exercising its diversity jurisdiction in suit brought by a non-tribal corporation
9 against non-member reservation attorney for malpractice and misrepresentation in an opinion
10 letter to secure loan for construction of sawmill to be built and managed by corporation on
11 tribal land); Marathon Oil Co. v. Johnston, 2004 WL 4960751 (D. Wyo. June 1, 2004)
12 (requiring tribal exhaustion where nonmember individual sued non-tribal company for injury
13 individual sustained on company's lease site on Indian reservation); Petrogulf Corp. v. Arco
14 Oil & Gas Co., 92 F. Supp. 2d 1111 (D. Colo. 2000) (requiring exhaustion of tribal remedies
15 where nonmember owner of working interest in gas field sued nonmember lessee of
16 adjoining tribal land for mineral trespass and misrepresentations to state commission).

17 When a court finds that tribal exhaustion is required, the court can stay or dismiss the
18 action, although it is error to dismiss for *lack of subject matter jurisdiction*. Sharber, 343 F.3d
19 at 976.  If dismissal may result in the running of the applicable statute of limitations, the court
20 should stay the action instead of dismissing it.  Id.   To ensure that Plaintiff does not
21 encounter any problems with the statute of limitations, the Court will stay the action instead
22 of dismissing it.

23 Because the Court abstains from exercising its jurisdiction over the case at this time,
24 the Court denies Defendants' motions to dismiss and Plaintiff's motion for leave to amend
25 without prejudice.

### III. CONCLUSION

27 For the reasons discussed above, Defendants' motions to dismiss [8,9] and Plaintiff's
28 motion for leave to amend [11] are **DENIED WITHOUT PREJUDICE**. The Court hereby

**STAYS** this action to allow Plaintiff to exhaust tribal remedies. The Court will hold a status conference on **April 11, 2007 at 4:00 p.m.**

**IT IS SO ORDERED.**

DATED: January 23, 2007

_____
Hon. Barry Ted Moskowitz
United States District Judge